## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE HUMANA, INC. PBM LITIGATION | Civil Action No.: 3:16-cv-00706-GNS<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Margie Waldrop and Jonathon D. Price ("Plaintiffs"), by and through the undersigned counsel for their Amended Class Action Complaint against Defendants Humana, Inc. and Humana Pharmacy Solutions, Inc. (collectively, "Defendants"), state and allege as follows:

<u>INTRODUCTION</u>

1.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against Defendants to recover monetary damages, equitable and injunctive relief, and other remedies resulting from Defendants' common fraudulent and deceptive "shadow" pricing scheme, whereby Defendants artificially inflate the cost of prescriptions for non-Medicare Part D medications and collect an undisclosed $5.00 fee from unwitting customers, causing them to pay more than they otherwise would have on purchases of prescription drugs.

2.      Defendant Humana, Inc. ("Humana") is a health insurance company that owns the pharmacy benefit manager ("PBM") Humana Pharmacy Solutions, Inc., which provides the pharmacy benefit to Plaintiffs and the Class (defined below).  This pharmacy benefit includes, *inter alia*, creating a formulary of drugs that will be covered; establishing a network of pharmacies that will serve as participating pharmacies for plan participants to obtain their

prescriptions; and adjudicating claims for prescription drugs, which includes determining coverage, copayment amounts, coinsurance amounts, and deductibles (if applicable).

3.      As set forth below, Defendants and their co-conspirators, which include participating pharmacies and other entities that may assist Defendant Humana Pharmacy Solutions, Inc. in a scheme to defraud plan members, have failed to disclose: (i) that a prescription is not covered by Medicare; (ii) that they would steer plan members into their own secret or "shadow" program to purchase non-Medicare covered drugs at an undisclosed rate; and (iii) that they would require the pharmacist to collect a "copayment" that included a hidden $5.00 fee (on top of the amount Humana paid the pharmacy for every purchase of a non-Medicare covered drug), artificially inflating the amount consumers pay for medically necessary prescription drugs.  Plan participants, including Plaintiffs and the Class, pay inflated amounts to participating pharmacies (who then automatically pass the overcharges to Defendants in the form of these undisclosed fees) in exchange for receiving these drugs.  Defendants' conduct is ongoing and continues to this day.

4.      Unbeknownst to the plan participants, Defendants steered, and continue to steer, plan participants to their hidden program instead of informing them that the prescription drug was not covered under Medicare or that it was a non-formulary drug under a member's plan, either or both of which prevented plan participants from electing other options that would have been less expensive than unwittingly utilizing Defendants' secret program.  Defendants do not disclose that the price of their drug includes the $5.00 fee.  Defendants further do not disclose that Humana does not pay any part of the costs of the drug in these circumstances.  The $5.00 hidden fee Defendants charge and then claw back from the payment amounts is pure, undisclosed profit for Defendants.  In some cases, the total price of the drug, with the $5.00 fee,

will exceed the price that Plaintiffs and the Class would have paid *without insurance*. Thus, Defendants end up paying nothing at all and Plaintiffs and the Class end up paying more than the full cost of the drug. In all cases, concealment of the $5.00 fee prevents Plaintiffs and the Class from engaging in an informed comparison between the drug for which they are paying an extra $5.00 fee and other comparable, less expensive choices, including medications that may be covered by their Medicare plans.

5.      Defendants utilize the U.S. Mail and interstate wire facilities to engage in their fraudulent billing scheme. Defendants represent to plan participants that their copayment amount is based on some portion of the actual cost for the drug and that non-formulary and non-Medicare covered prescription drugs will not be covered under the plan unless Humana makes an exception for that drug to be covered at the request of the patient and doctor. As to non-formulary drugs, Humana's 2016 Prescription Drug Guide states:

> **What if my drug isn't on the formulary?**
> If your drug isn't included in this list of covered drugs, visit **Humana.com/medicaredruglist** to see if your plan covers your drug. You can also call Customer Care and ask if your drug is covered.
>
> If Humana doesn't cover your drug, you have two options:
> • You can ask Customer Care for a list of similar drugs that Humana covers. Show the list to your doctor and ask him or her to prescribe a similar drug that is covered by Humana.
> • You can ask Humana to make an exception and cover your drug. See below for information about how to request an exception.
>
> Talk to your doctor to decide if you should switch to another drug that we cover or if you should request a formulary exception so that we'll cover your drug.

Humana, Inc., 2016 Prescription Drug Guide (2016) at 5.

6.      Moreover, Humana's 2016 Prescription Drug Guide makes similar representations for non-Medicare covered drugs:

If Humana doesn't cover your drug, you have two options:
• You can ask Customer Care for a list of similar drugs that Humana covers. Show the list to your doctor and ask him or her to prescribe a similar drug that is covered by Humana.
• You can ask Humana to make an exception and cover your drug. See below for information about how to request an exception.

Talk to your doctor to decide if you should switch to another drug that we cover or if you should request a formulary exception so that we'll cover your drug.

**How do I request an exception to the formulary?**
You can ask Humana to make an exception to our coverage rules. There are several types of exceptions that you can ask us to make.
• **Formulary exception:** You can ask us to cover your drug if it's not on our formulary.
• **Utilization restriction exception:** You can ask us not to apply coverage restrictions or limits on your drug. For example, if your drug has a quantity limit, you can ask us to not apply the limit and to cover more doses of the drug.

*Id.* at 5-6.

7.     Plaintiffs' 2016 Prescription Drug Guide also represents that Humana will pay for a portion of the prescription drugs for plan members:

**How much will I pay for covered drugs?**
Humana pays part of the costs for your covered drugs and you pay part of the costs, too. The amount of money you pay depends on:
• Which tier your drug is on
• Whether you fill your prescription at a network pharmacy
• Your current drug payment stage - please read your Evidence of Coverage (EOC) for more information.

*Id.* at 4.

8.     As described below, the costs incurred by plan members resulting from Defendants' ongoing and continuous fraudulent scheme can be significant.

9.     In order to implement Defendants' fraudulent scheme, Defendants' contracts with participating pharmacies require the pharmacists not to disclose (if they even are aware of it) the existence of the shadow fee program or the fact that a plan member could, in certain circumstances, pay less for the drug at the pharmacy's retail price, purchase (with a prescription)

a medically comparable medication that is covered by Medicare Part D, or purchase a medically comparable over-the-counter medication instead.

## PARTIES

### A.    Plaintiffs

10.    Plaintiff Margie Waldrop is a citizen of the State of Alabama.  During the Class Period, Plaintiff Waldrop participated in a Medicare Advantage health plan offered and administered by Humana and Humana Pharmacy Solutions, Inc., utilized Defendants' program to obtain prescriptions for medically necessary, non-Medicare covered prescriptions, and paid the amount charged by Defendants for such prescriptions.  As described in detail below, as a result of Defendants' fraudulent scheme, Plaintiff Waldrop has been injured by paying an inflated copayment amount as well as the undisclosed $5.00 fee for medically necessary, non-Medicare covered prescriptions.

11.    To maintain continuity of her medical care, Plaintiff Waldrop anticipates continuing to participate in a Medicare Advantage health plan offered and administered by Defendants, and therefore, inevitably will utilize Defendants' program to obtain prescriptions for medically necessary, non-Medicare covered prescriptions and will be required to pay the amount charged by Defendants for such prescriptions, including the hidden $5.00 fee.

12.    Plaintiff Jonathon D. Price is a citizen of the State of Alabama.  During the Class Period, Plaintiff Price participated in a Medicare Advantage health plan offered and administered by Humana and Humana Pharmacy Solutions, Inc., utilized Defendants' program to obtain prescriptions for medically necessary, non-Medicare covered prescriptions, and paid the amount charged by Defendants for such prescriptions.  As described in detail below, as a result of Defendants' fraudulent scheme, Plaintiff Price has been injured by paying an inflated copayment

as well as the undisclosed $5.00 fee for medically necessary, non-Medicare covered prescriptions.

13.     To maintain continuity of his medical care, Plaintiff Price anticipates continuing to participate in a Medicare Advantage health plan offered and administered by Defendants, and therefore, inevitably will utilize Defendants' program to obtain prescriptions for medically necessary, non-Medicare covered prescriptions and will be required to pay the amount charged by Defendants for such prescriptions, including the hidden $5.00 fee.

**B.     Defendants**

14.     Defendant Humana offers, among other things, health insurance products and services and network-based health and well-being services to beneficiaries and other government-sponsored health care programs.   Humana is a Delaware corporation with its principal place of business located at 500 West Main Street, Louisville, Kentucky 40202.

15.     Defendant Humana Pharmacy Solutions, Inc. is a wholly owned subsidiary of Humana with its principal place of business located at 500 West Main Street, Louisville, Kentucky 40202.  Humana Pharmacy Solutions, Inc. is a provider of pharmacy benefit solutions and serves as a PBM for millions of individuals throughout the United States.   Humana Pharmacy Solutions, Inc. represents that it "provides you and your employees with the benefits and services you really want – guaranteed costs with no surprises, a variety of plan options and pricing strategies, plus reliability you can count on that always puts patient care first."[1]

16.     Non-party Argus Health Systems Inc. ("Argus") is a wholly owned subsidiary of DST Systems, Inc., with its principal place of business located at 1300 Washington Street, Kansas City, Missouri 64105.   Argus provides Humana "with pharmacy claims processing,

---

[1]     *Humana Pharmacy Solutions*, HUMANA.COM   (2017),   https://www.humana.com/agent/products-and-services/pharmacy/solutions/ (last visited June 22, 2017).

reporting, and other administration services. Argus has been supporting Humana's core pharmacy benefit initiatives, including its Medicare Part D drug benefit strategy, since 2005."[2] On information and belief, Argus receives a substantial amount of business from Humana.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims are brought under federal statutes and necessarily involve adjudication of one or more federal questions.  This Court also has jurisdiction pursuant to 18 U.S.C. § 1964(a), which states that the "district courts of the United States shall have jurisdiction to prevent and restrain violations of [18 U.S.C. §] 1962."

18.     This Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2), (5), because: (i) the Class has more than 100 members; (ii) the amount at issue exceeds five million dollars, exclusive of interest and costs; and (iii) minimal diversity exists, as Plaintiffs and Defendants are citizens of different states.

19.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Kentucky and this District; have their principal executive offices and provided prescription drug services in Kentucky and this District; have advertised, marketed, and promoted their services in this District; and have sufficient minimum contacts within Kentucky and/or sufficiently availed themselves of the markets in Kentucky and this District to render the exercise of jurisdiction by this Court permissible.

---

[2]     Press Release, PR Newswire, Argus Heath Systems Renews Pharmacy Administration Services Contract With Humana (June 18, 2015), http://www.prnewswire.com/news-releases/argus-health-systemsrenews-pharmacy-administration-services-contract-with-humana-300101169.html; *see also* Press Release, American Pharmacy News, Argus Health renews contract with Humana (June 18, 2015), http://americanpharmacynews.com/stories/510549896-argus-health-renews-contractwith-Humana.

20.    Venue is proper in this District under 28 U.S.C. § 1391 because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in this District and/or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

### A.    Prescription Drug Coverage

21.    Over 90% of health care beneficiaries in the United States have a health care plan (either private or public) that covers all, or a portion of, their medical and pharmaceutical expenses.  About 55 million of these beneficiaries are covered by Medicare, the federal health insurance program for people who are 65 or older.  Beginning in 2006, Medicare enrollees have been entitled to a voluntary prescription drug benefit.  In 2016, nearly 41 million Medicare beneficiaries receive this benefit. Of this number, about 60% received the benefit through a stand-alone Prescription Drug Plan ("PDP") and about 40% received the benefit through a Medicare Advantage drug plan.  (A Medicare Advantage plan is a private health plan that is an alternative to the federally administered "original" Medicare program.)  Few plans cover all expenses, but instead, require plan participants to pay a portion of their drug costs out-of-pocket.  These out-of-pocket expenses include copayments, co-insurance, and/or deductibles.

22.    Even though plan participants cannot, and do not, negotiate the price charged by pharmacies for prescription drugs and do not negotiate the copayment or co-insurance price for the drug in a given transaction, they are required to pay the pharmacy a predetermined copayment or co-insurance amount in order to receive the prescription.

23.    Plan participants pay health insurance premiums, either directly or through an employer deduction, to a third-party payor for the purpose of insuring against healthcare costs, including prescriptions.

24.    In the context of Medicare, consumers pay a premium and obtain prescription drug coverage by enrolling in a Medicare Prescription Drug Plan, or PDP, pursuant to Part D of the Medicare Act ("Part D").  This may either be a stand-alone PDP or a Medicare Advantage plan that includes a PDP.  PDPs provide pharmacy benefits and the PBMs they engage serve as middlemen between drug manufacturers and/or pharmacies and the plans.  Medicare PDPs contract with the U.S. Government to offer prescription drug benefits along with numerous services, including developing a pharmacy network, formulary design, negotiating drug rebates, drug utilization review, and processing and analyzing prescription claims.

25.    Humana provides coverage for 19% of all Part D participants,[3] and eight million beneficiaries enrolled in Medicare have Humana-provided Part D coverage.[4]

26.    Medicare does not cover all prescription drugs.  Some drugs are excluded by Medicare coverage by law.  The drugs that Medicare does cover are generally referred to as "Part D drugs" – *i.e.*, those drugs covered by Part D of Medicare.  Within that group of Part D drugs, each PDP has its own list of covered drugs, called a "formulary."  For a PDP to cover a drug, the drug must be within the group of Part D drugs *and* within the PDP's formulary.  A PDP may also cover a drug pursuant to an exception.[5]

27.    As set forth above, Humana states that if a drug is not covered, it will, in the first instance, *deny* coverage and let the enrollee and his or her physician decide whether to seek an

---

[3]    *See* Jack Hoadley, The Health Pol'y Inst., and Juliette Cubanski & Tricia Neuman, The Henry J. Kaiser Fam. Found., Medicare Part D in 2016 and Trends Over Time (2016) at 1, http://files.kff.org/attachment/Report-Medicare-Part-D-in-2016-and-Trends-over-Time (last visited June 22, 2017).

[4]    *See* Press Release, Humana, Inc., Humana Offers Affordable 2017 Medicare Health Plans That Help Make It Easy to "Start With Healthy" (Oct. 14, 2016), http://press.humana.com/press-release/current-releases/humana-offers-affordable-2017-medicare-health-plans-help-make-it-easy.

[5]    *See Exceptions*, Ctrs. for Medicare & Medicaid Servs. (Nov. 29, 2016), https://www.cms.gov/Medicare/Appeals-and-Grievances/MedPrescriptDrugApplGriev/Exceptions.html.

exception, find a different drug that is covered, or choose a somewhat comparable over-the-counter drug that may be cheaper:

> If Humana doesn't cover your drug, you have two options:
> • You can ask Customer Care for a list of similar drugs that Humana covers. Show the list to your doctor and ask him or her to prescribe a similar drug that is covered by Humana.
> • You can ask Humana to make an exception and cover your drug. See below for information about how to request an exception.

2016 Prescription Drug Guide at 5.  Indeed, nowhere does Humana disclose that it unilaterally chooses to "cover" prescriptions that are not covered by Part D, instead of denying coverage. Nor does Humana disclose that it charges members a $5.00 fee above and beyond the cost of every prescription to do so.  Nor does Humana inform consumers of the medication alternatives they may be forgoing when they unknowingly buy a drug through Humana's shadow "coverage" system and pay the hidden $5.00 fee.

**C.    Defendants' Fraudulent Shadow Fee Scheme**

28.    Consumers purchase health insurance to protect them from unexpected high medical costs, including prescription drug costs.  Plan participants, including Plaintiffs and the Class, expect to pay less, or at least no more, than uninsured or cash-paying individuals would pay for a prescription.  Otherwise, they would receive no benefit from their insurance plan and would, in fact, be punished for having insurance.

29.    Plaintiffs are enrolled in Medicare Advantage health plans that are underwritten and issued by Humana.  Plaintiffs' health plans are contained in a standard form contract that provides a pharmacy benefit for outpatient prescription drugs.  Plaintiffs' health plans further provide that they are responsible for paying the applicable copayment for medically necessary, covered prescription drugs.

30.     Medicare defines a copayment as: "[a]n amount you may be required to pay as your share of the cost for health care services, like a doctor's visit, or prescriptions. A copayment is usually a set amount, rather than a percentage. For example, you might pay $10 or $20 for a doctor's visit or prescription."[6]

31.     A copayment is a type of insurance payment where the insured pays a specified amount that is usually a fraction of the total costs with the insurer paying the remaining costs. Copayments are usually a set amount based on the type of prescription drug.  Prescription drugs are usually tiered according to price.  The tiering of copays is standard in insurance policies and normally reflective of the costs for the prescription drugs, *i.e.*, the higher the cost of the drug, the higher the copay.

32.     According to Plaintiffs' plan documents, prescription drugs are grouped into one of five tiers:

> **Tier 1 - Preferred Generic:** Generic or brand drugs that are available at the lowest cost share for the plan
> **Tier 2 - Generic:** Generic or brand drugs that the plan offers at a higher cost to you than Tier 1 Preferred Generic drugs
> **Tier 3 - Preferred Brand:** Generic or brand drugs that the plan offers at a lower cost to you than Tier 4 Non-Preferred Brand drugs
> **Tier 4 - Non-Preferred Brand:** Generic or brand drugs that the plan offers at a higher cost to you than Tier 3 Preferred Brand drugs
> **Tier 5 - Specialty Tier:** Some injectables and other high-cost drugs

2016 Prescription Drug Guide at 4.

33.     When processing a drug ***covered*** by Medicare Part D, Defendants charge an administrative fee to recoup costs associated with the federal government's reimbursement process.

---

[6]     *Supporting Information: Glossary*, MEDICARE.GOV (2017), https://www.medicare.gov/find-a-plan/static pages/glossary/planfinder-glossary.aspx (last visited June 22, 2017).

34.     Certain prescription medications, however, are simply not covered by Medicare Part D plans.  Those medications must either be purchased at a pharmacy's offered retail price or, if desired, through additional insurance or by seeking a waiver to obtain coverage.

35.     Some of these uncovered medications have comparable, less costly alternatives.

36.     Some of these uncovered medications have comparable alternatives that *are* covered by Medicare Part D.

37.     The heart of Defendants' scheme is that Defendants fail to disclose that they have artificially inflated the prices of prescription drugs that are not covered by Medicare or the formulary and that they charge an undisclosed $5.00 fee each time such a prescription is filled. Defendants do not inform Plaintiffs and the Class that they have determined to "cover" these drugs by artificially inflating the cost by adding a $5.00 fee, resulting in Plaintiffs paying more than they otherwise would have they received a covered prescription or an alternative non-covered Medicare drug.  Defendants' scheme has been ongoing and continues to this day.

38.     Plaintiffs have been victims of Defendants' fraudulent shadow fee scheme. Specifically, during the Class Period, Plaintiffs filled prescriptions for non-Medicare covered drugs.  At the pharmacy counter, Plaintiffs were never informed that that their prescriptions were not covered because Defendants made it appear that they were.  Plaintiffs' claims were not rejected, their prescriptions were filled, and they were charged a "copayment" for a medically necessary prescription drug.  Unbeknownst to Plaintiffs, their drugs were not covered by Medicare Part D or on their specific formulary.  In processing these prescription fills, Defendants improperly inflated the price of the prescription drug "copayment" by adding an additional

undisclosed $5.00 fee, which was charged by the pharmacy and subsequently clawed back by Defendants.[7]

39.    On September 22, 2016, Plaintiff Waldrop filled a prescription at her local network pharmacy for a medically necessary prescription drug.  Unbeknownst to her, the prescription was not covered by Part D.  The pharmacy submitted the prescription drug claim and Defendants adjudicated the claim.  Rather than reject the claim as not covered, Humana required the pharmacy to charge, and collect, from Plaintiff Waldrop a $20.32 "copayment" for the prescription.  However, unbeknownst to her, Defendants, through Humana Pharmacy Solutions, Inc., steered Plaintiff Waldrop into its secret program, artificially inflated the cost of the prescription, and charged, as part of the copayment, an undisclosed $5.00 fee that it clawed back from the pharmacy.

40.    Plaintiff Waldrop's receipt from the pharmacy confirms her understanding that she was paying a copayment for a medically necessary covered drug, as illustrated in **FIGURE 1** below:

---

[7]    To protect Plaintiffs' privacy, Plaintiffs are not providing the specific prescription drugs that were submitted to Defendants, as Defendants already possess such information.  To the extent requested, Plaintiffs will provide such information to the Court and Defendants under seal.



41.     Had Plaintiff Waldrop known that her prescription was for a drug not covered by Medicare, she would have asked her pharmacist or physician to provide her a prescription for a covered drug, or if one was not available, she would have obtained a less costly prescription or over-the-counter medication.  Indeed, according to Plaintiff Waldrop's pharmacist, less costly

alternatives to her prescription were available, which would have cost Plaintiff Waldrop between $15.24 and $17.69.  Indeed, but for Humana's fraudulent shadow fee scheme, Plaintiff Waldrop would have paid less for her prescription and would not have been subject to Humana's hidden $5.00 fee.

42.    On February 21, 2017, Plaintiff Price filled a prescription at his local network pharmacy for a medically necessary prescription drug.  Unbeknownst to him, the prescription was not covered by Part D.  The pharmacy submitted the prescription drug claim and Defendants adjudicated the claim.  Rather than reject the claim as not covered, Humana required the pharmacy to charge, and collect, from Plaintiff Price a $20.32 copayment for the prescription.  However, unbeknownst to him, Defendants, through Humana Pharmacy Solutions, Inc., steered Plaintiff Price into its secret program, artificially inflated the cost of the prescription, and charged, as part of the copayment, an undisclosed $5.00 fee that it clawed back from the pharmacy.

43.    Had Plaintiff Price known that his prescription was for a drug not covered by Medicare, he would have asked his pharmacist or physician to provide him a prescription for a covered drug, or if one was not available, he would have obtained a less costly prescription or over the counter medication.  Indeed, according to Plaintiff Price's pharmacist, less costly alternatives to his prescription were available, which would have cost Plaintiff between $15.24 and $17.69.  Indeed, but for Humana's fraudulent shadow fee scheme, Plaintiff would have paid less for his prescription and would not have been subject to Humana's hidden $5.00 fee

44.    On March 21 and April 18, 2017, Plaintiff Price again re-filled the same prescription at his local network pharmacy.  The pharmacy submitted the prescription drug claim and Defendants adjudicated the claim, requiring the pharmacy to charge, and collect, from

Plaintiff Price a $20.32 copayment for each of these prescriptions. However, unbeknownst to him, Defendants, through Humana Pharmacy Solutions, Inc., steered Plaintiff Price into its secret program, artificially inflated the cost of the prescription, and charged, as part of the copayment, an undisclosed $5.00 fee that it clawed back from the pharmacy.

45.     Plaintiff Price's EOBs do not explain or state that Humana denied coverage for these prescriptions and instead steered Plaintiffs into its secret program, artificially inflated the cost of the prescription and charged a $5.00 fee. In fact, the EOBs make no reference to these non-covered prescriptions at all.

46.     Indeed, nowhere is it disclosed to Plaintiffs that their prescriptions were, in fact, for non-covered drugs and that Humana unilaterally determined to "cover" such drugs using its negotiated rate with the pharmacists, while charging a $5.00 fee for each prescription.

47.     The manner in which these transactions were processed made it appear both to Plaintiffs and to the pharmacy that the prescription drugs were covered by Plaintiffs' Part D coverage. The fact that these prescriptions were not covered (let alone that a $5.00 fee was involved) was not disclosed.

48.     Plaintiffs believe that they, and members of the Class, have been subjected to additional undisclosed charges as a result of Defendants' scheme.

49.     Another instance of Defendants' secret program and fee scheme is shown through the following document image (labeled as **FIGURE** 2) regarding the prescription drug Guaifenesin, which is a cough medicine. This image demonstrates how the shadow fee works. It shows the cost of the drug, including tax and the pharmacist's fee, is $6.67, but also reveals the pharmacy had to charge the customer a copayment of $11.67. The remaining $5.00 was sent back to the Medicare PDP. The image below taken from an article from Fox 8, entitled "Copay

or you-pay? Prescription drug clawbacks draw fire," that describes how the PBM claws back a

significant portion of the copay for Guaifenesin.[8]

**FIGURE 2:**



50.    Indeed, the Fox 8 investigation supports Plaintiffs' claim and states that Humana

may be clawing back money from customers, when the customers' drugs aren't covered under

the Medicare Part D program.  The Fox 8 investigation stated that several pharmacists told Fox 8

that the documentation they received clearly shows that Humana ordered the collection of copays

that were higher than the costs of the drugs.

51.    Louisiana State Insurance Commissioner Jim Donelon questioned the legality of

this practice: "'It is an additional premium in my judgment, comparable to raising rates,'

---

[8]    *See* Lee Zurik, *Copay or you-pay? Prescription drug clawbacks draw fire*, Fox8Live.com (May 4, 2016, 3:10 PM), http://www.fox8live.com/story/31891070/zurik-copay-or-you-pay-prescription-drug-clawbacks-draw-fire.

Donelon warns. 'And I think that charge constitutes a price of having insurance with whatever carrier you're insured with.'" *Id*.

52.     With respect to the payment of copayments above the cost of actual cost of the prescription drug, Mr. Donelon further stated: "You could say that, if the customer is paying more than the drug is worth, it's not a copay – it's a 'you-pay.' 'There's no copay,' our pharmacist says, 'that is an absolute, additional premium being paid, that they're paying, that they don't realize.'" *Id.*

53.     In these instances, instead of a traditional copayment based on the actual cost of the prescription drug, patients, like Plaintiffs and the Class, are unknowingly footing the entire bill for their prescriptions, whereas Defendants pay nothing and make a sizable undisclosed profit off of the plan participants.

54.     Unfortunately, plan participants often do not know the true costs of their prescriptions or that there are cheaper options available.  And, many pharmacies are contractually prohibited from letting plan participants know about less expensive options.

55.     As demonstrated above, Defendants have engaged, and continue to engage, in a fraudulent scheme to steer Plaintiffs and other class members into their secret program and charge inflated amounts for non-Medicare covered prescription drugs, even though Plaintiffs could have paid less for alternative covered or non-covered drugs.  Since these particular drugs are not covered by Medicare and therefore are not subject to the expenses involved in Medicare processing and reporting, Defendants have required pharmacies to collect these inflated copayments and then clawed back $5.00 for each non-Medicare covered prescription drug.

56.    Plaintiffs' investigation reveals that Defendants' shadow fee scheme is pervasive and is occurring with numerous non-Medicare covered prescription drugs, including Phentermine, Alcortin, Bystolic, and Estrogen.

57.    In these instances, instead of a traditional copayment based on the actual cost of the prescription drug, patients, like Plaintiffs and the Class, are unknowingly paying unnecessary fees purely to inflate Defendants' profits.

58.    Unfortunately, plan participants often do not know the true costs of their non-Part D prescriptions or that there are cheaper options available over-the-counter, available under Medicare, or even available simply at a lower retail price from the pharmacy.

59.    Defendants' fraudulent shadow fee scheme results in plan participants paying more for the cost of a prescription with "insurance" – which defeats the entire purpose of having insurance in the first place.  Defendants do not disclose their scheme to plan participants and, in fact, disguise their scheme through contractual provisions, which make it appear that their copayments are based on, and are a portion of, the cost of the prescriptions.

60.    Defendants' pharmacy network includes "more than 60,000 pharmacies nationwide."[9]  Defendants tell plan participants that "[u]sing pharmacies in your network saves you money" because "if you don't use one of these pharmacies, you will pay full price for your prescription." *Id.*

61.    Defendants' contracts with participating pharmacies require that the pharmacists are not to disclose the existence of the fee or the fact that plan members could, in certain circumstances, pay more in a "copay" for a prescription drug than the drug would cost without

---

[9]    *Get the most value from your prescription coverage by using network pharmacies.*, HUMANA.COM (2017), https://www.humana.com/individual-and-family-support/tools/network-providers/pharmacies (last visited June 22, 2017).

insurance, or would cost if class members purchased an over-the-counter alternative or an alternative that was covered by Part D.[10]

62.     Defendants' manner of processing the filling of prescriptions that are not covered by Part D *makes it appear as if* the prescription is covered by Part D.  Indeed, both consumers and pharmacies are deceived by the way in which Defendants process these transactions.

63.     Consumers unknowingly fund the scheme with copayments inflated by the hidden $5.00 fee.  Meanwhile, Defendants are able to benefit not only from the hidden $5.00 fee on every one of these transactions, but also from the rebates and other price concessions that they receive from the drug companies for processing these sales on otherwise non-covered drugs.  On information and belief, it is in Defendants' interest to run these transactions through their shadow "coverage" system, rather than deny coverage and increase the likelihood that a participant will choose a different product.

## CLASS ALLEGATIONS

64.     Plaintiffs bring this action individually and on behalf of the following Class (the "Nationwide Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All individuals residing in the United States and its territories who purchased medically necessary prescription drugs not covered by their Humana Medicare plans at any time during the relevant statute of limitations period (the "Nationwide Class Period") and paid in excess of the amount paid to the pharmacist for such prescriptions.

65.     Plaintiffs reserve the right to redefine the Class prior to certification.

66.     Excluded from the Class are Defendants, any of their parent companies, subsidiaries, and/or affiliates, their officers, directors, legal representatives, and employees, any

---

[10]     On information and belief, Defendants' contracts with participating pharmacies require them to "agree to not waive, rebate or discount the Member Copayment," and to "provide evidence acceptable to Humana of member cost collections."

co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

67.    This action is brought, and may properly be maintained, as a Class action pursuant to Fed. R. Civ. P. 23.    This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

68.    The Class is so numerous that the individual joinder of all of its members is impracticable.    Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class members is in the thousands and that the members of the Class are geographically dispersed across the United States.    While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

69.    Common questions of law and fact exist, as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class.    These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

    (a)    whether Defendants' pricing of the prescription drugs was false and misleading;

    (b)    whether Defendants engaged in a scheme to steer Plaintiffs and the Class into their secret program and inflate the copayment for medically necessary, non-Medicare covered prescription drugs and charge an undisclosed $5.00 (or other) fee;

(c)     whether Defendants concealed facts material to Plaintiffs and Class members about the prices of medically necessary drugs not covered by Medicare;

(d)     whether Defendants engaged in a pattern of deceptive activity intended to defraud Plaintiffs and the Class;

(e)     whether Defendants utilized or formed enterprises for the purpose of carrying out the fraudulent scheme;

(f)     whether Defendants used the U.S. Mail and interstate wire facilities to carry out the fraudulent scheme;

(g)     whether the Defendants used the U.S. Mail and interstate wire facilities to carry out their conspiracy and agreement;

(h)     whether Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO");

(i)     whether Defendants violated the Alabama Deceptive Trade Practices Act;

(j)     whether Plaintiffs and the Class are entitled to restitution or compensatory damages; and

(k)     whether Plaintiffs and the Class are entitled to declaratory, equitable, and injunctive relief.

70.     Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct, since they all relied on Defendants' representations in the plan contract regarding their prescription drug coverage and paid copayments to their pharmacies based on those representations.

71.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

72.    A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impracticable.  Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and the judicial system and protects the rights of the Class.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

73.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because individual actions by Class members would create: (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants; and/or (2) adjudications that, as a practical matter, would be dispositive of the interests of other Class members not parties to the adjudications, and would substantially impair or impede the ability of such non-party Class members to protect their interests.

74.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted, or refused to act, on grounds generally applicable to the Class, as

Defendants uniformly inflate the copayment for medically necessary, non-Medicare covered prescription drugs by charging an undisclosed $5.00 (or other) fee, thereby making appropriate final, equitable, injunctive, and ancillary relief, with respect to Plaintiffs and the Class as a whole.

75.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

### Count I - Violation of RICO, 18 U.S.C. § 1962(c)

76.    Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

77.    At all relevant times, Defendants are "person[s]" within the meaning of RICO, 18 U.S.C. §§ 1961(3), 1964(c).

78.    At all relevant times, and as described herein, Defendants operated and managed, and continue to operate and manage, as legal entity enterprises within the meaning of 18 U.S.C. § 1961(4), the individual participating pharmacies where Plaintiffs and members of the Class filled their prescriptions and were charged undisclosed fees (collectively, the "Pharmacy Enterprise").   Specifically, Defendants directed and controlled the affairs of the Pharmacy Enterprise, requiring the participating pharmacies to charge and collect from Plaintiffs and members of the Class copayments that included the undisclosed $5.00 fee that was the subject of Defendants' fraudulent shadow fee scheme.

79.    Defendants utilized participating pharmacies both for the illegal conduct described herein, but also, for the legal purpose of facilitating medically necessary prescription drug delivery services in accordance with the law.

80.    Additionally, at all relevant times and as described herein, Defendants operated and managed, and continue to operate and manage, Argus as a legal entity enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Argus Enterprise").

81.    Argus's dependence on Humana for a substantial amount of its revenue from pharmacy benefit administration and claims processing made it vulnerable to being controlled by – and its pharmacy benefit administration and claims processing were actually controlled by – Humana as part of Humana's scheme to collect additional monies from plan members for medically necessary, prescription drugs not covered by Medicare Part D.

82.    On information and belief, as Humana's administrator and claims processor, Argus acted at Humana's direction and had no discretion to refuse to collect the hidden fees that are at issue here.    Humana controlled Argus, which was engaged in an otherwise legitimate business related to administering health plan pharmacy benefits, by directing it to process pharmacy transactions and to communicate with pharmacies in accord with Humana's scheme to collect additional monies from plan members for medically necessary, prescription drugs not covered by Medicare Part D.

83.    Additionally, at all relevant times and as described herein, Defendants carried out their fraudulent shadow fee scheme through an association-in-fact enterprise, within the meaning of 18 U.S.C. § 1961(4), comprised of Defendants and the individual participating pharmacies where Plaintiffs and members of the Class filled their prescriptions and were charged undisclosed fees (collectively, the "Humana Enterprise").

84.    Each Defendant is legally and factually distinct from each of the enterprises described herein.

85.    At all relevant times, each of the enterprises described herein were engaged in, and their activities affected, interstate commerce within the meaning of RICO, 18 U.S.C. § 1962(c).

86.    As described herein, the Humana Enterprise has, and continues to have, an ascertainable structure and function separate and apart from the pattern of racketeering activity in which Defendants have engaged.  The purpose of the Humana Enterprise is to provide Plaintiffs and Class members with access to medically necessary prescription drugs in accordance with the terms of their plans.  In addition, the members of the Humana Enterprise function as a structured and continuous unit and performed roles consistent with this structure.  The members of the Humana Enterprise constitute an integrated network that relies upon its constituent members to perform certain legitimate and lawful activities that are not being challenged in this complaint,[11] including the provision of health insurance and plan and claims administration services by Humana, which were done for many claims lawfully and without resort to unlawful practices. However, the fraudulent shadow fee scheme is not legitimate, as it involves artificially inflating the cost of prescription drug amounts for non-Medicare Part D drugs thus enabling Defendants to obtain additional monies that they otherwise would not be entitled to, or enabled to, obtain. Aside from legitimate activities carried out by the members of the Humana Enterprise, Defendants used the Humana Enterprise to carry out the fraudulent and unlawful activities alleged herein, including, but not limited to, intentionally inflating the cost of non-Medicare Part

---

[11]    The Humana Pharmacy Manual, for example, refers to refers to each pharmacy's "participation in [Humana's] pharmacy network and your role in delivering quality pharmacy services to our members."  Humana Inc., Humana Pharmacy Solutions Pharmacy Manual (2016) at 3, http://apps.humana.com/marketing/documents.asp?file=2038959 (last visited June 22, 2017).

D drugs and collecting additional monies from that they otherwise would not be entitled to, or enabled to, obtain from Plaintiffs and members of the Class.

87.    The purpose of the Defendants' use of the Pharmacy Enterprise, the Argus Enterprise, and the Humana Enterprise described herein was to create a mechanism by which Defendants could obtain additional monies from plan members for medically necessary prescription drugs not covered by Medicare Part D.   In particular, as described herein, Defendants created what appeared to be an appropriate structure between participating pharmacies, the insurance company, and the PBM to provide pharmacy benefits to plan members, which includes, *inter alia*, establishing a formulary of drugs that will be covered and a network of pharmacies that will serve as participating pharmacies for plan members to obtain their prescriptions, copayment amounts, coinsurance amounts, and deductibles, when, in fact, they were invalid.

88.    Through their roles in the scheme, Defendants benefited by engaging in a scheme whereby Defendants adjudicated claims for prescription drugs by artificially inflating the cost of prescription drug amounts for non-Medicare Part D drugs that were not even covered under the plans in which Plaintiffs and members of the Class were participants.  Defendants further used the enterprises to facilitate their goal by adjudicating, charging, and collecting additional monies from Plaintiffs and members of the Class, causing them to pay more than they otherwise would have had they received a covered prescription or an alternative non-covered Medicare drug.

89.    Through their wrongful conduct, as alleged herein, Defendants, in violation of 18 U.S.C. § 1962(c), conducted and participated in the conduct of the enterprises' affairs, directly and indirectly, through a '"pattern of racketeering activity,'" as defined in 18 U.S.C. § 1961(5).

90.    Defendants, acting through their officers, agents, employees, and affiliates, have committed numerous predicate acts of '"racketeering activity,'" as defined in 18 U.S.C. § 1961(5), prior to, and during, the Class Period and continue to commit such predicate acts in furtherance of their fraudulent shadow fee scheme, including: (a) mail fraud, in violation of 18 U.S.C. § 1341; and (b) wire fraud, in violation of 18 U.S.C. § 1343.  Such predicate acts include the following:

(a)    by mailing, or causing to be mailed, and otherwise knowingly agreeing to the mailing of various materials and information, including, but not limited to, evidence of coverage documents, plan documents, pharmacy benefit descriptions with omissions of material fact regarding coverage for non-Medicare Part D drugs and with materially false and misleading statements regarding non-Medicare Part D drugs, and the supposed "benefit" determinations associated with such drugs, for the purpose of artificially inflating the amount of monies paid and each such mailing constituting a separate and distinct violation of 18 U.S.C. § 1341; and

(b)    by transmitting, or causing to be transmitted, and otherwise knowingly agreeing to the transmittal of various materials and information, including, but not limited to, adjudication determinations, copayment demands, receipts stating the amount to be collected with omissions of material fact regarding coverage for non-Medicare Part D drugs and with materially false determinations regarding non-Medicare Part D drugs, and related supposed "benefit" determinations, by means of telephone, facsimile, and the Internet in interstate commerce, for the purpose of effectuating the

above-described illegal scheme and each such transmission constituting a separate and distinct violation of 18 U.S.C. § 1343.

91.     As set forth above, Defendants made coverage and benefit determinations that were contrary to law and its members' contracts.  Defendants knew that prescriptions were not covered by Medicare Part D, that they would steer plan members into their own undisclosed program to purchase non-Medicare drugs at an undisclosed rate, and that they would require participating pharmacies to collect additional undisclosed monies above and beyond what Defendants paid the pharmacy to purchase the non-Medicare prescription drug.

92.     In furtherance of their fraudulent shadow fee scheme, Defendants, in violation of 18 U.S.C. §§ 1341, 1343, repeatedly and regularly used the U.S. Mail and interstate wire facilities to further all aspects of the illegal scheme by delivering and/or receiving materials, including contracts, pharmacy benefit determinations, copayment determinations, and other materials necessary to carry out the scheme to defraud Plaintiffs and other Class members.

93.     The foregoing wrongful conduct is ongoing and continues to this day.

94.     The foregoing communications via the U.S. Mail and interstate wire facilities contained false and fraudulent misrepresentations and/or omissions of material facts, had the design and effect of preventing Plaintiffs and the Class from learning of Defendants' illegal scheme, and/or otherwise were incident to an essential part of Defendants' illegal scheme to defraud.

95.     Defendants knew that plan participants would reasonably rely on the accuracy, completeness, and integrity of Defendants' disclosures.  Plan participants did rely, to their detriment, on Defendants' misrepresentations and omissions.

96.     Each such use of the U.S. Mail and interstate wire facilities alleged in this complaint constitutes a separate and distinct predicate act.

97.     Plaintiffs and members of the Class have been and continue to be injured by reason of Defendants' RICO violations because they directly and immediately overpaid for prescription drugs and paid a hidden $5.00 fee.  Their injuries are proximately caused by Defendants' violations of 18 U.S.C. § 1962(c) because these injuries are the foreseeable, direct, intended, and natural consequence of Defendants' RICO violations (and commission of underlying predicate acts) and, but for Defendants' RICO violations (and commission of underlying predicate acts), they would not have suffered these injuries.

98.     Pursuant to 18 U.S.C. § 1964(a), Plaintiffs and the members of the Class are entitled to equitable relief to prevent and restrain Defendants from violating 18 U.S.C. § 1962(c).

99.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the members of the Class are entitled to recover, threefold, their damages, costs, and attorneys' fees from Defendants and other appropriate relief.

### Count II – Violation of RICO, 18 U.S.C. § 1962(d)

100.     Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

101.     During the Class Period, Defendants agreed to, and did, conspire with other co-conspirators, including other unnamed insurance companies that utilize Humana Pharmacy Solutions, Inc., to engage in the fraudulent shadow fee scheme and conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (described above) through a pattern of racketeering activity, as described above, in violation of 18 U.S.C. § 1962(d).  This conspiracy to violate 18 U.S.C. § 1962(c) constitutes a violation of 18 U.S.C. § 1962(d).

102.    In furtherance of this conspiracy, Defendants and their co-conspirators committed numerous overt acts, as alleged above, in the pattern of racketeering described above, including the unlawful adjudication of pharmaceutical benefit determinations for prescription drugs that were not covered by Medicare Part D and the unlawful demand and collection of additional monies associated with such adjudications.

103.    The foregoing wrongful conduct is ongoing and continues to this day.

104.    As a direct and proximate result, and by reason of the activities of Defendants and their conduct in violation of Pursuant 18 U.S.C. § 1962(d), Plaintiffs and the members of the Class are entitled to equitable relief pursuant to 18 U.S.C. § 1964(a), to prevent and restrain Defendants from violating 18 U.S.C. § 1962(d).

105.    As a direct and proximate result, and by reason of the activities of Defendants and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs and the Class have been injured in their business and property within the meaning of 18 U.S.C. § 1964(c) and are entitled to recover treble damages, together with the costs of this lawsuit, expenses, and reasonable attorneys' fees.

**Count III – Violation of Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5**

106.    Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5 provides that: "deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful" where they cause "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services[,]" cause "confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services[,]" or where a commercial entity engages "in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code §§ 8-19-5(2), (3), (27). Plaintiffs and the Alabama Sub-Class are "consumer[s]" within the meaning of Ala. Code § 8-19-3(2).

107.    Plaintiffs, the Alabama Sub-Class, and Defendants are "persons" within the meaning of Ala. Code § 8-19-3(5).

108.    Defendants provide pharmaceutical insurance coverage to consumers, which falls within the meaning of "any trade or commerce" under Ala. Code § 8-19-3(8).

109.    Defendants engaged, and continue to engage, in the deceptive practice of omitting the material fact that an insured's payments for a medically necessary drug also include a $5.00 undisclosed fee, as the drug is not covered by the Medicare Part D program and Defendants cannot submit the drug to Medicare.

110.    Defendants engaged, and continue to engage, in the deceptive practice of requiring pharmacies not to inform their customers (*i.e.*, Defendants' insureds) about drug costs or pricing/reimbursement practices, including that their payment for drugs not covered by Medicare Part D would include an additional $5.00 (or any other) fee, or that they could compare the price of the particular drug, once Defendants' fee was added to it, against the cost of the drug at retail, against other similar over-the-counter medications, or against other similar medications covered by Medicare Part D.  Defendants owed Plaintiffs a duty to disclose the truth regarding their secret or "shadow" program to purchase non-Medicare covered drugs at an undisclosed rate.  Defendants possessed exclusive knowledge of the facts associated with the non-Medicare program and intentionally concealed the foregoing from Plaintiffs and the Class, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

111.    Defendants engaged, and continue to engage, in the false pretense of making it appear that the cost of the medication was the fee-inflated price and that the prescription was processed as a Medicare-covered drug.

112.    These misleading statements, false pretenses, deceptive practices, and omissions were material in that reasonable consumers would have opted not to use insurance to purchase medication that (with the administrative fee included) was more expensive than the cost of the same medication at retail, a comparable over-the-counter medication, or a comparable medication that was covered by Medicare Part D.

113.    Defendants intended that Plaintiffs and consumers rely upon these unfair, false, misleading or deceptive practices and omissions, which were made in connection with the sale of insurance and pharmaceuticals in violation of the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (27).

114.    As a result of Defendants' violative conduct, Plaintiffs and the Class have suffered damages and are entitled to injunctive and equitable relief, including, but not limited to, restitution and disgorgement, and an award of attorneys' fees pursuant to Ala. Code § 8-19-11(e).  Defendants' misleading statements, false pretenses, deceptive practices, and omissions were held out to the public at large and many members of the public would receive relief from the success of this action.

115.    By committing the acts alleged above, Defendants have violated the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (27).

116.    Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

117.    Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

118.    Defendants used, or employed, such deceptive and unlawful acts or practices with the intent that Plaintiffs and members of the Class rely thereon.

119.     Plaintiffs and the other members of the Class did so rely.

120.     Plaintiffs and the other members of the Class purchased the prescription drugs sold by Defendants, who misrepresented the price of the prescription drugs purchased by Plaintiff and the Class and failed to disclose the $5.00 fee.

121.     Plaintiffs and the other members of the Class would not have paid as much as they did for the prescription drugs (or their material equivalent), but for Defendants' deceptive and unlawful acts.

122.     As a result of Defendants' conduct, Plaintiffs and the other members of the Class sustained damages in amounts to be proven at trial.

123.     In accordance with the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (27), Plaintiffs seek an order: (1) enjoining Defendants from continuing to conduct business through its deceptive conduct; (2) requiring Defendants to conduct a corrective advertising campaign; (3) ordering Defendants to implement whatever measures are necessary to remedy the untrue, misleading, or deceptive business acts or practices; (4) awarding Plaintiffs and the Nationwide Class costs, including reasonable attorneys' fees; and (5) ordering such other relief as may be just and proper.

**Count IV – Fraud**

124.     Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

125.     Defendants concealed the true prices of prescription drugs not covered by their Medicare Part D prescription drug benefit.  Defendants did so by failing to disclose that they were artificially inflating the cost for medically necessary, non-Medicare covered drugs and then charging an undisclosed additional $5.00 (or any other) fee for drugs that are not submitted to Medicare for processing to Plaintiff and members of the Class.  Indeed, contrary to Humana's

representations, Humana paid nothing, whereas Plaintiffs paid in excess of the full amount for their prescription drugs.

126.    Defendants made these misrepresentations and omissions knowingly, or at least with reckless disregard of their falsity, given that Defendants knew the prices that they reported to Plaintiffs and members of the Class were substantially (and unjustifiably) higher due to the undisclosed, unnecessary fee and that Defendants were not paying anything for those drugs.

127.    Under the circumstances alleged, Defendants owed a duty to Plaintiffs and members of the Class to disclose the material fact of whether a prescription drug was covered by Medicare Part D and the true price of such a drug.  Defendants represented to Plaintiffs and members of the Class that if a drug was not covered, they would deny coverage, creating the impression that the plan participant would be able to decide whether to seek an exception, find a different drug that was covered, or choose a comparable over-the-counter drug that was cheaper. Defendants failed to disclose the material fact that they unilaterally "covered" prescriptions that were not covered by Part D, instead of denying coverage, and charged Plaintiffs and members of the Class a $5.00 fee above and beyond the cost of every prescription to do so.

128.    Defendants intended to induce Plaintiffs and the Class to rely on their omissions. Defendants knew that Plaintiffs and the Class would rely on Defendants' omissions regarding drug prices and, as a result, would make higher payments without knowing of the fee and without considering alternative medications that might cost less and, in fact, did cost less for Plaintiffs and the Class.

129.    Plaintiffs and the Class justifiably relied upon Defendants' omissions, in that Plaintiffs and members of the Class, as a result of Defendants' omissions, were deprived of their money and denied the ability to make an informed choice: purchase a drug with an inflated price;

decide to pay retail for the drug; purchase a comparable over-the-counter medication where available; or purchase a comparable medication that was covered by Part D. Plaintiffs and the Class relied on Defendants' omissions to their detriment.

130.    As a proximate result of Defendants' conduct, Plaintiffs and the Class have been damaged because they paid amounts for prescription drugs that were far higher than the prices they would have paid, but for Defendants' misconduct.

131.    Defendants are therefore liable to Plaintiffs and the Class for the damages they sustained.

### Count V – Negligent Misrepresentation

132.    Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

133.    Defendants had a pecuniary interest in the prescription drug transactions about which they supplied information to Plaintiffs and the Class. Indeed, the $5.00 (or any other) fee that they charged to Plaintiffs and the Class in connection with their purchases of non-Medicare covered drugs went to Defendants as pure profit. Moreover, on information and belief, Defendants benefitted in additional ways from running these transactions through their shadow fee scheme, as alleged above.

134.    Defendants failed to inform Plaintiffs and the Class of the copay prices of prescription drugs. Defendants failed to disclose the fact that they had artificially inflated the costs of the prescription drugs and charged an undisclosed fee of $5.00 (or any other amount) for each medically necessary, non-Medicare prescription drug.

135.    Defendants had no reasonable grounds to believe its communications were true. The prices that Defendants reported to Plaintiffs and members of the Class were substantially

(and unjustifiably) higher than the prices they should have charged for these drugs, absent the undisclosed fee.

136.    Under the circumstances alleged, Defendants owed a duty to Plaintiffs and members of the Class not to supply false information and to exercise reasonable care or competence in supplying correct information.    Plaintiffs and the Class, as enrollees in Defendants' plans, constitute a limited group of persons for whose benefit and guidance Defendants intended to supply the information.    Defendants also intended to influence Plaintiffs and the Class and for Plaintiffs and the Class to rely on their omissions regarding drug prices and, as a result, would make higher payments without knowing of the fee.

137.    Plaintiffs and the Class justifiably relied upon Defendants' omissions, in that Plaintiffs and members of the Class, as a result of Defendants' omissions, were deprived of their money and denied the ability to make an informed choice: purchase a drug with an inflated price; decide to pay retail for the drug; purchase a comparable generic drug or over-the-counter medication where available; or purchase a comparable medication that was covered by Part D. Plaintiffs and the Class relied on Defendants' omissions to their detriment.

138.    As a proximate result of Defendants' negligent conduct, Plaintiffs and the Class have been damaged because they paid prices for prescription drugs that were far higher than the prices they would have paid, but for Defendants' misconduct.

139.    Defendants are therefore liable to Plaintiffs and the Class for the damages they sustained.

### Count VI – Unjust Enrichment and Common Law Restitution

140.    Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

141.    As a result of Defendants' wrongful and deceptive conduct, Plaintiffs and Class members have suffered a detriment while Defendants have received a benefit. Specifically, Defendants concealed the fact and existence of their scheme to artificially inflate the amounts charged for medically necessary, non-Medicare drugs and they collected an undisclosed $5.00 fee to Plaintiffs and the Class each time a prescription was filled.

142.    Defendants have received and retained not only the undisclosed fees, but also other unjust benefits from the Plaintiffs and Class members and inequity has resulted.

143.    It is inequitable and unconscionable for Defendants to retain these benefits.

144.    Because Defendants concealed their scheme, Plaintiffs and Class members were not aware of the true facts concerning the $5.00 fee and did not benefit from Defendants' misconduct.

145.    Defendants knowingly accepted the unjust benefits of their deceptive and fraudulent conduct.

146.    As a result of Defendants' misconduct, the amount of its unjust enrichment – *i.e.*, the amount of concealed fees charged – should be disgorged and returned to the Plaintiffs and Class members.

### Count VII – Declaratory and Equitable Relief

147.    Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

148.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief based upon such a judgment.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the state statutes described in this Complaint.

149.     As alleged above, during the Class Period, Defendants' deceptive "shadow" pricing scheme has been uniformly implemented to mislead consumers and that practice is ongoing and continues to this day.  Therefore, Plaintiffs face a substantial and imminent risk of future harm and will be injured in the future.

150.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendants' conduct continues to violate the statutes and laws referenced herein.

151.     The Court also should issue corresponding equitable and injunctive relief enjoining Defendants from conducting business through the unlawful, unfair, misleading, or deceptive business acts or practices, untrue and misleading labeling and marketing, and other violations of law described in this Complaint; requiring Defendants to implement whatever measures are necessary to remedy the unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint, including, but not limited to, disclosure of all fees assessed and alternative options participants have to purchase a different medication than the one originally submitted; and notify each and every individual, who paid an unnecessary, undisclosed $5.00 fee (or any other fee) for medically necessary, non-Medicare prescription drugs, in addition to that prescription drug's cost, of the pendency of the claims in this action in order to give such individuals an opportunity to obtain restitution and other relief from Defendants.

152.     Legal remedies are inadequate to address the substantial likelihood of future harm Plaintiffs will sustain in filling prescriptions again.  The risk of future harm is real, immediate, and substantial because Plaintiffs still participate in a Medicare Advantage health plan offered and administered by Defendants, and therefore, inevitably will utilize Defendants' pharmacy

benefit to obtain prescriptions for medically necessary, non-Medicare covered prescriptions and will be required to pay the amount charged by Defendants for such prescriptions, including the hidden $5.00 fee. While monetary damages will compensate Plaintiffs for Defendants' past misconduct, monetary damages will not prevent future misconduct, which Plaintiffs have alleged is likely to occur.

153. The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiffs and members of the Classes will likely incur damages. On the other hand, the cost to Defendants of complying with an injunction is relatively minimal.

154. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing insureds, such as Plaintiffs and Class members, from being subject to inflated copayments and hidden $5.00 fees each time they fill medically necessary, non-Medicare covered prescriptions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for relief and judgment against Defendants as follows:

A. That the Court certifies the Class under Fed. R. Civ. P. 23, appoints Plaintiffs as Class Representatives, and appoints their attorneys as Class Counsel to represent the members of the Class;

B. That the Court declares that Defendants' conduct has violated, and continues to violate, the statutes and laws referenced herein;

C. That the Court preliminarily and permanently enjoins Defendants from conducting business through the untrue, misleading, or deceptive business acts or practices and other violations of law described in this Complaint;

D.     That the Court, pursuant to 18 U.S.C. 1964(a), prevent and restrain Defendants from violating 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) and order Defendants to divest themselves of any interest, direct or indirect, in any enterprise and restrain Defendants from engaging any scheme to defraud involving the charging of undisclosed fees for medically necessary, non-Medicare prescription drugs.

E.     That the Court orders Defendants to implement whatever measures are necessary to remedy the untrue, misleading, or deceptive business acts or practices and other violations of law described in this Complaint, including, but not limited to, disclosure of all fees assessed and alternative options participants have to purchase a different medication than the one originally submitted;

F.     That the Court orders Defendants to notify each and every individual, who paid an unnecessary, undisclosed $5.00 fee (or any other fee) for medically necessary, non-Medicare prescription drugs in addition to that prescription drug's cost, of the pendency of the claims in this action in order to give such individuals an opportunity to obtain restitution and other relief from Defendants;

G.     That the Court orders Defendants to pay damages or restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or deceptive business act or practice or in violation of law, as described in this Complaint, plus pre- and post-judgment interest thereon;

H.     That the Court orders Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants, as a result of their acts or practices, as alleged in this Complaint;

I.     That the Court awards damages to Plaintiffs and the Class;

J.    That the Court enters an Order awarding costs, expenses, and reasonable attorneys' fees; and

K.    That the Court grants such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

DATED:  June 22, 2017                    **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

                                          */s/ Joseph P. Guglielmo*
                                         Joseph P. Guglielmo
                                         *Interim Co-Lead Class Counsel*
                                         Erin Green Comite
                                         Carey Alexander
                                         230 Park Avenue, 17th Floor
                                         New York, NY 10169
                                         Telephone: 212-223-6444
                                         Facsimile:  212-223-6334
                                         jguglielmo@scott-scott.com
                                         ecomite@scott-scott.com
                                         calexander@scott-scott.com

                                         Derek W. Loeser
                                         *Interim Co-Lead Class Counsel*
                                         Gretchen S. Obrist
                                         **KELLER ROHRBACK, LLP**
                                         1201 Third Avenue, Suite 3200
                                         Seattle, WA 98101-3052
                                         Telephone: 206-623-1900
                                         Facsimile:  206-623-3384
                                         dloeser@kellerrohrback.com
                                         gobrist@kellerrohrback.com

                                         Ronen Sarraf
                                         *Chair of the Executive Committee*
                                         Joseph Gentile
                                         **SARRAF GENTILE LLP**
                                         14 Bond Street, Suite 212
                                         Great Neck, NY 11021
                                         Telephone: 516-699-8890
                                         Facsimile:  516-699-8968
                                         ronen@sarrafgentile.com
                                         joseph@sarrafgentile.com

Greg L. Davis
*Executive Committee Member*
**DAVIS & TALIAFERRO, LLC**
7031 Hacyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile:  334-409-7001
gldavis@knology.net

Brian C. Gudmundson
*Executive Committee Member*
**ZIMMERMAN REED, PLLP**
80 S. Eighth Street, Suite 1100
Minneapolis, MN 55402
Telephone: 612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Robert A. Izard
*Executive Committee Member*
Craig A. Raabe
Christopher M. Barrett
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile:  860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

Andrew A. Lemmon
*Executive Committee Member*
**LEMMON LAW FIRM, LLC**
15058 River Road
P.O. Box 904
Hahnville, LA 70057
Telephone: 985-783-6789
Facsimile:  985-783-1333
andrew@lemmonlawfirm.com

William H. Narwold
*Executive Committee Member*
Mathew Jasinski
**MOTLEY RICE LLC**
One Corporate Center

20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1676
Facsimile:  860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Karen Hanson Riebel
*Executive Committee Member*
Eric Neil Linsk
**LOCKRIDGE GRINDAL NAUEN, PLLP**
100 Washington Avenue, South, Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Facsimile:  612-339-0981
khriebel@locklaw.com
rnlinsk@locklaw.com

E. Kirk Wood, Jr.
*Executive Committee Member*
**WOOD LAW FIRM LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-612-0243
Facsimile:  866-747-3905
kirk@woodlawfirmllc.com

Mark K. Gray
*Interim Liaison Counsel*
Jacob Levy
**GRAY AND WHITE LAW**
713 E Market Street #200
Louisville, KY 40202
Telephone: 502-805-1800
Facsimile:  502-618-4059
mgray@grayandwhitelaw.com
jlevy@grayandwhitelaw.com

*Attorneys for Plaintiffs*